IN THE MATTER OF THE Dissolution of the Partnership
heretofore Existing Between Walter E. Mondale and
Robert L. Johnson engaged in the Practice of Law under
the firm name of MONDALE AND JOHNSON.

No. 11300.
Submitted January 9, 1968. Decided February 6, 1968.
Rehearing denied March 8, 1968.
437 P.2d 636.

Robert L. Johnson, Lewistown, Hughes & Bennett and Leon Lysaght, Jr., Michael J. Hughes (argued), Helena, for appellant.

J. E. McKenna, Lewistown, Anderson, Symmes, Forbes, Peete & Brown, Weymouth Symmes (argued), Billings, Donald E. Ronish (argued), Lewistown, for respondent.

MR. JUSTICE JOHN C. HARRISON delivered the Opinion of the Court.

This appeal concerns the dissolution of the partnership between Walter E. Mondale and Robert L. Johnson, and the Estate of H. Leonard DeKalb. Johnson sought an accounting and following issuance of an order to show cause the matter was heard on May 19, 1966, resulting in the appointment of a Special Master. Upon the submission of the report of the Special Master the trial court made, on November 22, 1966, its findings of fact and conclusions of law. On December 19, 1966, the court heard appellant's objections to the findings and

conclusions, and his motion for a new trial. The court over-ruled appellant's objections and request for a new trial, and on December 29, 1966, a judgment was filed from which appellant appeals.

This dispute was between two professional men, who were the surviving partners of what in years past had been a well-known law partnership in central Montana. Troubles arose on the death on November 2, 1965, of Judge H. Leonard De-Kalb, the senior member, who was first admitted to the bar of this state in 1902 and over the years had developed an extensive practice. For years the partnership was known as Belden and DeKalb, and in the past twenty years has been known as DeKalb, Dockery and Symmes; DeKalb, Dockery and Dockery; DeKalb, Dockery and Mondale; DeKalb, Dockery, Mondale and Johnson, and finally DeKalb, Mondale and Johnson. With the death of Judge DeKalb, the affairs of the partnership continued, but the evidence clearly indicated that the newest member to the firm, Johnson, intended to split the partnership blanket which culminated in this litigation.

On January 15, 1966, some two months after the death of Judge DeKalb, the appellant publicly announced the dissolution of the partnership and fired the two women working for the partnership. He then hired them as his personal secretaries and much of the work of winding up the partnership was done by them, including such duties as sorting the mail, dividing up the cases, refiling for the two ex-partners, sending out bills, answering the phone, and a multitude of other jobs secretaries do in law offices. Although the appellant states that he had tried to discuss the termination of the partnership with the respondent during the two-month period after Judge De-Kalb's death, this was denied by respondent.

As previously noted, this cause deals with a partnership accounting, a subject that is always difficult. We observe that in a legal practice with the attorney-client relationships, the somewhat nebulous, at times, fee arrangements; the impossibil-

ity of flat appraisals of future fees in a given case; and its many varying facts, legal partnership accounting becomes more of an art than a mathematical formula. A study of this entire record shows a determined but understanding effort by the trial court to unravel, in a fair way, a most distasteful personal clash in a professional partnership.

We further observe that some similar problems connected with the law practice prompted this court to establish the Legal Practice Commission of Montana to provide that lawyers themselves referee or umpire disputes that involve not only legal and equitable rights, but personal and ethical relationships in the legal profession as well. We think the court has very broad discretion to settle rights in such instances when called upon to do so. It is a difficult and disagreeable task but one where the court's discretion must be respected as long as it is as fair to the parties as it is humanly and professionally possible. Here we find the court so performed its task.

On January 17, 1966, appellant Robert L. Johnson filed an application for leave to file an account with the district court of Fergus County. The judgment before us on appeal entered upon appellant's original application for an accounting is the end result of two full hearings, innumerable proceedings, including the appointment of Special Master Emmett Angland, Esq., Great Falls, Montana. Nearly a full year, 1966, was consumed by the trial court and its Special Master in an effort to settle the rights of the parties and on December 27, 1966, a judgment was entered. Now two years after appellant's original application we are requested by appellant to return this matter to the trial court for further consideration.

We will not set forth the trivia that fills the record of this case for to do so would question the professional responsibilities of the parties involved in their profession. Suffice to say, appellant who had ably and successfully handled three major negligence cases that brought substantial fees to the partnership, evidenced a reluctance to permit the distribution of these

fees as partnership assets. This resulted in the coming into the dispute by the Estate of Judge DeKalb. At the trial an agreement by both appellant and Mondale, the surviving partners, to pay the estate $25,000 as its full interest in the firm was accepted. Inasmuch as both the appellant and respondent acknowledged this debt, and the judgment provides for its payment, our discussion will consider the provisions for the estate only in considering from what funds it is to be paid.

The appellant sets forth some eight issues that he considers meritorious for our consideration, which are:

(1) The judgment directly contradicts the findings of fact in providing that the partnership obligation to the DeKalb estate be paid entirely from proceeds of cases assigned to Mr. Johnson;

(2) The judgment violates the law of Montana in providing that the partnership's obligation to the DeKalb estate be paid from the proceeds of cases assigned to Johnson;

(3) The judgment contradicts the findings of fact and the agreement by and between the parties by failing to give credit for, or provide for the reassignment of the accounts receivable which Johnson assigned to the DeKalb estate;

(4) Contrary to the requirements of law, the judgment awarded Johnson far less than his rightful share of the profits;

(5) The provisions of the judgment are contrary to the law, in that their effect is to deny Johnson the right to recover expenses incurred in handling the cases assigned to him;

(6) The judgment is in error in not compensating Johnson for his services in winding up the partnership affairs;

(7) Johnson did not waive his right to compensation for winding up partnership affairs; and

(8) The judgment allows the final termination of the partnership to be postponed indefinitely, and in doing so compromises the interests of both Johnson and the DeKalb estate.

In considering the merits of appellant's contentions, we will set forth only those findings of fact and the conclusions of law

that cover the issues, said findings and conclusion having become part of the judgment. They are:

"3. That at his death, H. Leonard DeKalb had an interest in the assets of the Partnership, including the Law Library, Office Furniture, Accounts Receivable and business then pending; that in Open Court at this hearing, the Executrix of his estate, who is also the principal devisee and legatee, and the Attorney representing said estate, agreed to accept $25,000 in full and final payment for said interest, which sum the Court finds to be just and reasonable, and hereby approves.

"4. The Estate of H. Leonard DeKalb, deceased, is justly and equitably entitled to receive $12,500.00 each from Mr. Mondale and Mr. Johnson.

"5. That Partner Mondale has already paid to the DeKalb Estate $3,500.00 and therefore his portion of said $25,000.00 is entitled to be reduced by said $3,500.00.

"6. That since November 2, 1965, the Surviving Partners have received the following monies from the Partnership business:

| WALTER E. MONDALE | | ROBERT L. JOHNSON |
|---|---|---|
| $15,085.76 | (to 12/31/65) | $15,506.78 |
| 31.76 | (to 1/15/66) | 1,275.76 |
| 1,473.00 | (to 5/26/66) | 9,765.42 |
| $16,590.52 | TOTAL | $26,547.96 |

"7. That by virtue of the receipts which each Surviving Partner has retained, as set forth in Paragraph 6 hereof, each of them has been adequately reimbursed for the Partnership business he has handled and wound up to this date; that $4,146.87 was set aside in a Special Account, all but $1,847.10 was spent; that said $1,847.10 has been deposited with the Clerk of this Court.

"8. That the Special Master herein shall present to this Court his statement for services rendered herein and for costs incurred by him, to be approved by the Court; that after that

the money then in the possession of said Special Master shall be, by him, disbursed as follows:

"(1) In payment of the fees and costs of said Special Master, as fixed and approved by the court;

"(2) $21,500.00 to the Estate of H. Leonard DeKalb, Deceased;

"(3) $3,500.00 to Walter E. Mondale, as reimbursement for the sum already paid by him to said estate;

"(4) The remainder shall be equally divided between Walter E. Mondale and Robert L. Johnson.

"9. The $1,847.10 now in the possession of the Clerk of this Court shall be equally divided between Walter E. Mondale and Robert L. Johnson.

"10. That any Accounts Receivable now listed herein as Partnership Property, should be equally divided between the two Surviving Partners as collected; each Partner will make reasonable effort to collect those which he handled and any thereof which he deems uncollectible shall be delivered to Credit Bureau of Lewistown for collection at the usual fee; said Credit Bureau will then remit one-half thereof to each of the Partners, after payment of said fee;

"11. That the presently pending business should be handled by the Partner to whom the Special Master has assigned the same, and the fees collected therefrom shall then be divided:

"One-third to the Partner who completes the same.

"Two-thirds equally divided between Walter E. Mondale and Robert L. Johnson * * *

"16. That the some 500 wills of the Partnership shall be placed in escrow with the 1st National Bank of Lewistown; that an employee of this bank shall send letters to the maker or makers of the several wills asking them to call for the particular will and receipt for same to the bank; that the bank will indicate in the letter that the maker may keep the will, return it to one of the individual partners or leave it with the bank;

that the expense of this escrow shall be paid in equal shares by Robert L. Johnson and Walter E. Mondale.

### "CONCLUSIONS OF LAW

"1. That the Special Master shall proceed with deliberate speed to carry out Finding of Fact No. 8.

"2. That the Clerk of Court shall proceed with deliberate speed to pay over the money as directed in Finding of Fact 9.

"3. That Mondale and Johnson shall carry out Finding of Fact 10.

"4. That Mondale and Johnson shall escrow the Wills as found and directed in Finding of Fact 16.

"5. That both Robert L. Johnson and Walter E. Mondale jointly and severally, shall provide the necessary Bills of Sale to implement the Findings of Fact; that they shall pursue with diligence and promptness the Findings as to Accounts Receivable."

 Concerning issue one, that the judgment contradicts the findings of fact, we must agree, but find that the clerical error in finding No. 8 can be corrected without further hearings by the trial court. As previously set forth finding of fact No. 4 provided that each of the remaining partners should pay to the estate $12,500. Finding No. 5 notes the payment of $3,500 to the estate and therefore reduces the amount owed by Mondale by the amount he paid, $3,500.00. If no further findings had been made as to the payments to the estate by the remaining partners, Mondale would have $9,000 to pay, and the appellant $12,500. However, in finding No. 8 obviously a clerical error was made in its direction to the master for in this finding here the master is directed to pay from money in his hands:

"2. $21,500 to the Estate of H. Leonard DeKalb, Deceased.

"3. $3,500 to Walter E. Mondale, as reimbursement for the sum already paid by him to the estate." Clearly this contradicts findings 4 and 5 which are controlling and obviously stated the intention of the court. All parties agree that the Estate of H. Leonard DeKalb be paid $25,000, and that Walter

Mondale be credited with an amount already paid of $3,500. Upon return to the trial court these corrections should be made.

■■ Concerning issue two we find no merit. The appellant fails to either consider or understand that the two surviving partners occupy a fiduciary relationship to the DeKalb estate and that funds in the hands of the Special Master are partnership funds and not individual funds.

It matters not where the funds to pay the claims come from, either from cases handled by appellant or respondent, for at the time they came to the firm they were assets of the partnership.

■ Concerning issue No. 4 we likewise hold it is without merit. Our statute, section 63-502, R.C.M.1947, provides:

"On dissolution the partnership is not terminated, but continues until the winding up of partnership affairs is completed." When a professional partnership between attorneys at law is dissolved by death of one, the surviving partner or partners, when considering the unfinished business entrusted to the firm, must consider such cases as an asset of the partnership. Where, as in this case, they are unable to agree on the distribution of those assets, after paying off all partnership obligations, and it became necessary for the appointment of a Special Master to facilitate the final dissolution, the decision of the court to split the returns of unfinished business, two-thirds to the partner handling the business and one-third to the other is fair.

■ Issues five and six complain of the inconsistency of the court's judgment when compared to its direction to the Special Master as to expenses incurred in handling assigned cases. We find no merit to appellant's contentions. In its order to the Special Master the court endeavored to place the assets of the partnership into a Master's account so that the obligations could be paid off. The provision in the judgment allowing the two-thirds and one-third distribution for other pending busi-

ness is an effort to terminate without further litigation, the remaining unfinished business.

Issue seven also relates to the winding up of partnership affairs and is without merit. The judgment provides how this business is to be concluded after the Master's report has been complied with. In spite of appellant's complaints it is fair. His complaint that he has released and assigned over to the estate of H. Leonard DeKalb all "accounts receivable" and that no recognition has been made of such "assignment" in the judgment is untenable, for with the agreement to pay the DeKalb estate $25,000 for its interest in the partnership the "accounts receivable" and the unfinished business of the partnership became assets of the two surviving partners. It is of interest to note the good faith allegation of appellant in making the assignment of the accounts receivable assigned, "all payments of any kind and nature due or to become due to Walter E. Mondale for services as Mayor of the City of Lewistown, Montana." To say the least this is most unusual.

Contrary to appellant's allegations in issue eight we find that the court in its findings of fact No. 8, subd. 4, has clearly made provisions for the funds in the hands of the Master, and in finding No. 11 provision is made for the pro rata distribution of all other business.

The judgment of the district court is affirmed except insofar as issue No. 1 is concerned and the court is directed in that respect to make its judgment conform to the views herein expressed. The cause is remanded to the district court so that it may forthwith direct the Special Master to carry out the provisions of the court's judgment as amended.

MR. CHIEF JUSTICE JAMES T. HARRISON and MR. JUSTICES HASWELL, ADAIR and CASTLES concur.