These appeals arise out of a dispute between lawyer J. Scott Vowell and Vowell Meelheim, P.C., and Beddow, Erben Bowen, P.A. ("Beddow"), regarding the division of the legal fees received in four contingency fee cases. The trial court conducted an ore tenus proceeding and issued a comprehensive order containing a detailed statement of the facts as well as an exhaustive discussion of the applicable law. The trial court entered a judgment against Vowell and the Vowell firm and in favor of the Beddow firm, in the amount of $220,891.15. Specifically, the trial court held that Vowell was entitled only to the percentage of the fees recovered that he would have received had he stayed with the Beddow firm, plus a reasonable hourly rate for the time he spent in completing the work on the four cases.[1] Vowell and the Vowell firm appeal, and Beddow cross appeals.
At the outset we note that the trial court's findings of fact will not be disturbed unless they are clearly erroneous, without supporting evidence, manifestly unjust, or against the great weight of the evidence. Marvin's, Inc. v. Robertson,608 So.2d 391 (Ala. 1992). Furthermore, this Court will not presume error and will affirm the trial court's judgment if it is supported by any valid legal ground. Marvin's, Inc., supra.
The facts, as found by the trial court, are as follows: J. Scott Vowell was first employed as a law clerk in 1960 by the Beddow law firm, which was then a partnership known as Beddow, Embry Beddow. After Vowell's graduation from law school in 1961, he was employed as an attorney by that same law firm, and he became a partner in the early 1970s. *Page 639 
In 1978, the structure of the Beddow firm was changed from a partnership to a professional association. Its partners became shareholders, officers, and directors of the new professional association, which took the name Beddow, Fullan Vowell, P.A. In 1987, Vowell's percentage participation in the profits of the firm was 21%.
In 1987, the law firm employed Richard Meelheim and Gregory McKay as associates. Vowell, Meelheim, and McKay represented plaintiffs in personal injury cases and other civil cases. In August of that year, Vowell informed Bowen and Beddow that Vowell, Meelheim, and McKay were leaving the Beddow firm. Vowell and Meelheim began contacting clients of the Beddow firm to secure their agreement to be represented by Vowell and his new firm. These contacts were made either in writing or by telephone in September 1987, while Vowell was still a shareholder, officer, and director of the Beddow firm and were made without the knowledge or consent of the other shareholders. The contacts were made from the offices of the Beddow firm. Vowell never advised the other members of the firm that he was meeting with the clients with respect to Vowell's departure from the firm and his representing them in the future.
Vowell, Meelheim, and McKay moved out of the Beddow firm's offices on October 1, 1987. Included in the materials moved were the lawyers' files on the four cases in dispute here. The trial court found from the evidence that there was never any agreement among the attorneys concerning the distribution of the fees to be earned from these four cases.
Vowell and Meelheim reached an agreement with the four clients that the Vowell firm would represent each of them. The four clients effectively terminated the Beddow firm as counsel for them.
The dispositive issue on appeal is whether the trial court erred in its division of the contingent fees earned from the four cases at issue. Specifically, in regard to these four cases, did Vowell breach any fiduciary duty or obligations to the Beddow firm, and, if so, what would be the appropriate division of legal fees that were recovered from the four cases?
Citing Chief Judge Benjamin Cardozo's opinion in Meinhard v.Salmon, 249 N.Y. 458, 164 N.E. 545 (1928), as well as Meehan v.Shaughnessy, 404 Mass. 419, 535 N.E.2d 1255 (1989), the trial court held that Vowell owed fiduciary obligations to the Beddow firm and that, if there was any conflict, it was Vowell's duty as a fiduciary to consider the interest of the Beddow firm first.
In Meehan, Meehan and Boyle were partners in a law firm. They decided to leave that firm and form their own law partnership. Planning to leave the old firm, both began making lists of clients and of referring attorneys involved in cases they were handling. The trial court held that Meehan and Boyle did not breach the fiduciary duty owed to their partners. However, the Supreme Judicial Court of Massachusetts reversed, holding that Meehan and Boyle did breach their fiduciary duties. Specifically, that court stated:
 "We agree that Meehan and Boyle, through their preparation for obtaining clients' consent, their secrecy concerning which clients they intended to take, and the substance and method of their communications with clients, obtained an unfair advantage over their former partners in breach of their fiduciary duties.
 "A partner has an obligation to 'render on demand true and full information of all things affecting the partnership to any partner.' "
404 Mass. at 436, 535 N.E.2d at 1264. (Citation omitted.)
As stated by the trial court, while the meetings between Vowell and Meelheim and the four clients may not have been secret or surreptitious, the meetings were not disclosed to the other lawyers in the Beddow firm. We agree with the trial court that Vowell breached his fiduciary obligations owed to the Beddow firm, by contacting clients of that firm and obtaining employment as the attorney for those clients while he was still an officer, director, and shareholder of that firm. *Page 640 
As concerns the division of the legal fees earned, we note that we have not found, nor have the parties cited, any Alabama case directly on point concerning the proper disposition of contingent fees earned in a case taken by a withdrawing lawyer. However, as the trial court held, a majority of jurisdictions have followed the approach articulated by the California cases of Jewel v. Boxer, 156 Cal.App.3d 171, 203 Cal.Rptr. 13
(1984), and Fox v. Abrams, 163 Cal.App.3d 610, 210 Cal.Rptr. 260
(1985). This view rests on the principle that pending contingent-fee cases are assets of the originating firm and that lawyers practicing together have a continuing fiduciary duty to each other and the firm.
The trial court held that in the absence of an agreement by partners of a law partnership or shareholders of a law professional association, the majority rule requires that legal fees earned from clients of the partnership or professional association be divided according to the interest of each partner in the partnership or the interest of each shareholder in the professional association. See, e.g., Jewel v. Boxer,156 Cal.App.3d 171, 203 Cal.Rptr. 13 (1984); Fox v. Abrams,163 Cal.App.3d 610, 210 Cal.Rptr. 260 (1985); Kreutzer v.Wallace, 342 So.2d 981 (Fla.Dist.Ct.App. 1977); Kirsch v.Leventhal, 181 A.D.2d 222, 586 N.Y.S.2d 330 (1992); Platt v.Henderson, 227 Or. 212, 361 P.2d 73 (1961); Sullivan, Bodney Hammond v. Bodney, 16 Kan. App. 2d 208, 820 P.2d 1248 (1991);Frates v. Nichols, 167 So.2d 77 (Fla.Dist.Ct.App. 1964);Ellerby v. Spiezer, 138 Ill. App.3d 77, 92 Ill.Dec. 602,485 N.E.2d 413 (1985); Resnick v. Kaplan, 49 Md. App. 499,434 A.2d 582 (Ct.Spec.App. 1981).
In Jewel v. Boxer, the trial court allocated fees among former partners of a law partnership based on results obtained and time expended. The Court of Appeals of California reversed the trial court's ruling, holding that, absent a contrary agreement, any income generated through the winding up of unfinished business was required to be allocated to the former partners according to their respective interests in the former partnership. The court stated that this approach discouraged former partners from soliciting the partnership's clients and scrambling for possession of client files.
In Fox v. Abrams, the California Court of Appeals applied the same approach to lawyers who had been employees of a law corporation. There, two of the four lawyers employed by the law corporation formed a new law corporation, taking with them approximately 70 of the old corporations's clients. The trial court concluded that the old corporation was entitled only to a quantum meruit recovery for the reasonable value of any services that may have been performed on those cases before the two lawyers terminated their relationship with the old corporation. However, on appeal, the California Court of Appeals reversed, applying the same approach that was applied in Jewel v. Boxer. It held that compensation for completing the work in the 70 cases should be allocated among the attorneys in accordance with the percentage interest each attorney had had in the old corporation.
Applying the majority rule, the trial court held that Vowell was entitled to the percentage of fees that he would have been entitled to under the arrangement he had had with the Beddow firm (21%). However, the trial court made an equitable adjustment in this majority rule. In order to adjust the allocation of fees to achieve what the trial court deemed a fair result for all concerned, it held that Vowell would be allowed a reasonable hourly rate for the time spent by the Vowell firm in completing the work on the four cases. Specifically, the trial court found that a reasonable rate for Vowell's time in 1987 would have been $125 per hour. Therefore, based on the total fee the Vowell firm had received in each of the four cases at issue here, the trial court calculated Vowell's compensation for the hours spent on each case, plus Vowell's 21% interest in the fees, and then calculated the total amount due the Beddow firm, plus interest.
We have reviewed the record, as well as the carefully reasoned and well-written order of the trial court, and we find no error in the division of the legal fees earned. The judgment is affirmed. *Page 641 
1940528 — AFFIRMED.
1940566 — AFFIRMED.
HOOPER, C.J., and ALMON, HOUSTON, and BUTTS, JJ., concur.
[1] The trial court held that a reasonable rate for Vowell's time in 1987 would have been $125 per hour.